## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

CHRISTI GILLESPIE,

                **Plaintiff,**

v.

DENTSPLY SIRONA, INC.,

                **Defendant.**

**Case No. 23-CV-00395-SEH-CDL**

### OPINION AND ORDER[1]

Before the Court is Defendant Dentsply Sirona, Inc.'s ("Dentsply")[2] Motion to Dismiss and Brief in Support. [ECF No. 10]. Dentsply moves to dismiss Plaintiff Christi Gillespie's First Amended Petition ("Amended Petition") for failure to state a claim upon which relief may be granted. For the reasons stated below, the Amended Petition is dismissed with prejudice as to immunity and free speech/Oklahoma Citizens Participation Act ("OCPA") *Burk* tort theories, but dismissed without prejudice as to the remaining *Burk*

---

[1] Plaintiff requests a hearing. Upon review of the entire record, the Court finds that a hearing is unnecessary in this matter and decides the issue based on the parties' submissions.

[2] Dentsply notes in its motion that Gillespie named the incorrect entity as the defendant in this action. However, Dentsply does not move to dismiss on this ground, and that issue does not impact the Court's analysis on the issues raised in the motion. Therefore, the Court will not substantively address the issue in this order.

tort theories and as to Plaintiff's wrongful discharge claim under Pennsylvania law.

## I. Background[3]

Dentsply employed Gillespie in a sales role. [ECF No. 2 at 29]. During her employment with Dentsply, Gillespie was elected to the City Council for the City of Broken Arrow, and she remained in office while continuing her employment with Dentsply. [*Id.* at 29–32]. After the COVID-19 pandemic began, Gillespie uploaded a live stream video to her public Facebook page dedicated to her role as a city counselor in which she shared her opinions about a proposed mask mandate. [*Id.* at 30]. Gillespie voted against the proposal, and she posted another video to her public page in which she explained her vote against the mandate. [*Id.* at 30–31].

Shortly after Gillespie uploaded the video, her area director with Dentsply, Cindy Roach, contacted her to let her know that she "received complaints about Gillespie's behavior and conduct" at the City Council meeting. [*Id.* at 31]. Roach also "made accusations and complaints to Gillespie over the content of both of Gillespie's Facebook pages as it related to all things connected with Gillespie's vote and stance on mask mandates."

---

[3] The Court does not make any factual determinations at this stage. Rather, this background section includes the allegations made by Gillespie in the Amended Petition. The Court views Gillespie's factual allegations, as it must, in the light most favorable to her as the non-moving party.

[*Id*.]. Gillespie removed the video from the Facebook page upon Roach's instruction. [*Id*.].

After Gillespie's conversation with Roach, Kim Martin with Dentsply's human resources department contacted Gillespie to tell her that the company would investigate the Facebook video and posts about the mask mandates. [*Id*. at 32]. Dentsply terminated Gillespie a few days later. [*Id*.]. Martin told her the reason was that "Gillespie had used her position at Dentsply to further Gillespie's city council agenda as it related to the mask mandate" and that Gillespie violated the provision in her employment contract that she "devote her best efforts 'solely' towards the business of the company." [*Id*.].

Gillespie claims she was wrongfully terminated in violation of Oklahoma and Pennsylvania public policy. [*Id*. at 32–36]. Dentsply moves to dismiss her claims. [ECF No. 10].

## II. Discussion

### A. Standard

A defendant may move to dismiss under Fed. R. Civ. P. 12(b)(6) based on a plaintiff's failure to state a claim upon which relief can be granted. To survive such a motion, "a plaintiff must plead sufficient factual allegations 'to state a claim to relief that is plausible on its face.'" *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104 (10th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "There is a low bar for surviving

a Rule 12(b)(6) motion to dismiss," and a case "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Griffith v. El Paso Cnty., Colo.*, 129 F.4th 790, 815 (10th Cir. 2025) (cleaned up).

Although the facts alleged in the operative pleading are viewed in the light most favorable to the non-moving party, "[f]actual allegations must be enough to raise a right to relief above the speculative level" *Twombly*, 550 U.S. at 555. "In other words, dismissal under Rule 12(b)(6) is appropriate if the complaint alone is legally insufficient to state a claim." *Brokers' Choice*, 861 F.3d at 1104–05.

Additionally, conclusory allegations need not be accepted. *Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs*, 263 F.3d 1151, 1154–55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

## B. Gillespie fails to state a claim for wrongful discharge under Oklahoma public policy.

The default rule under Oklahoma law is that employees are "terminable at-will, which means that either the employer or the employee may terminate the employment relationship at any time for any reason or no reason at all without incurring liability for doing so." *Patel v. Tulsa Pain Consultants, Inc.*,

*P.C.*, 511 P.3d 1059, 1062 (Okla. 2022). There is, however, a public policy exception to the at-will employment rule that allows employees to bring a tort action for wrongful discharge against their former employers. *Burk v. K-Mart Corp.*, 770 P.2d 24, 28 (Okla. 1989). These claims are commonly known as "*Burk* tort" claims. To prove a *Burk* tort claim, a plaintiff must show the following:

> (1) an actual or constructive discharge (2) of an at-will employee (3) in significant part for a reason that violates an Oklahoma public policy goal (4) that is found in Oklahoma's constitutional, statutory, or decisional law or in a federal constitutional provision that prescribes a norm of conduct for Oklahoma and (5) no statutory remedy exists that is adequate to protect the Oklahoma policy goal.

*Vasek v. Bd. of Cnty. Com'rs of Noble Cnty*, 186 P.3d 928, 932 (Okla. 2008)

 *Burk* tort claims are a "'tightly circumscribed' exception to the employment at will doctrine." *Id*. at 931. "An employer's violation of a state-declared public policy is the 'fundamental predicate for a *Burk* tort.'" *Booth v. Home Depot, U.S.A., Inc.*, 504 P.3d 1153, 1156 (Okla. 2022) (quoting *Darrow v. Integris Health, Inc.*, 176 P.3d 1204, 1210 (Okla. 2008)). At bottom, *Burk* torts are meant to provide a remedy for employees who are "discharged for refusing to act in violation of an established and *well-defined* public policy or for performing an act consistent with a *clear and compelling* public policy." *Burk*, 770 P.2d at 29 (emphasis added).

Dentsply argues that Gillespie's amended petition should be dismissed because she has not pled that her termination was made, in significant part, for a reason that violates a clearly articulated public policy. [ECF No. 10 at 4–11]. Gillespie responds that that several Oklahoma public policies support her *Burk* tort claim: (1) peace, health, and safety; (2) various governmental immunities; and (3) freedom of speech principles and the Oklahoma Citizen's Participation Act ("OCPA"); and (4) exceptions to the at-will employment rule identified in *Groce v. Foster*.[4] [ECF No. 2]. As explained below, none of these support a *Burk* tort claim.

### 1. Peace, health, and safety, as articulated by Gillespie, is not a sufficient public policy to support a *Burk* tort claim.

Gillespie's argument on this point is not particularly clear. But as the Court understands it, Gillespie contends that the Oklahoma Supreme Court's decision in *Ho v. Tulsa Spine & Specialty Hosp., L.L.C.*, 507 P.3d 673, 675–76 (Okla. 2021), and the Governor's public statements support her theory of recovery. [ECF No. 17 at 16–17]. Dentsply argues that *Ho* is meaningfully distinguishable. [ECF NO. 21 at 5–6]. The Court agrees that *Ho* is

---

[4] Gillespie is inconsistent between the First Amended Petition and her response to the motion to dismiss about what precise authorities she relies on to show a violation of Oklahoma public policy. Therefore, the Court will address only the authorities sufficiently raised in the response brief.

meaningfully distinguishable, and finds that the Governor's public statements cannot support a *Burk* tort claim.

The plaintiff in *Ho* was a nurse at a Tulsa hospital. She alleged that the hospital conducted "elective surgeries and required [her] to render services without adequate availability and usage of personal protective equipment" during the COVID-19 pandemic, despite an executive order that specifically prohibited elective surgeries. 507 P.3d at 675–76. The plaintiff further alleged that she expressed her safety concerns to the hospital, questioned why elective surgeries were happening in violation of the executive order, asked to be furloughed, and informed her manager that she would not come to work due to safety concerns. *Id.* at 676.

The plaintiff's employment was terminated after raising her concerns, and she brough a *Burk* tort claim in Oklahoma state court. *Id.* In reviewing the plaintiff's claim, the Oklahoma Supreme Court reversed the lower court's dismissal and found that the Governor's temporary emergency orders, which fell under specific statutory authority from the legislature, sufficiently "established public policy of curtailing an infectious disease." *Id.* at 682. The court highlighted that the purpose of the orders "was to protect the public, patients, and hospital staffs, and to reduce the chances of contracting and spreading the unprecedented contagious disease." *Id.* The court further noted that "[t]he ban on elective surgeries was only in effect for" a limited time

7

during which the Governor had specific authority under applicable statutes. *Id*.

Gillespie acknowledges that "the underlying facts of *Ho* and the case at bar are clearly distinguishable." [ECF No. 17 at 17]. She nevertheless contends that both cases "involve wrongful termination in response to legal actions taken by employees in response to the COVID-19 pandemic," and that "there was a clear public policy [at the time she was terminated], per Governor Stitt, that the issue of mask mandates was to be left to local officials." [*Id*.]. As the Court understands Gillespie's argument, the relevant public policy in this case can be found in the Governor's public statements as cited in news articles, not within a particular executive order issued under specific statutory authority.[5] [ECF No. 17 at 17].

In *Ho*, the Oklahoma Supreme Court relied upon the statutory authority the Legislature granted the Governor to issue emergency orders and the specific language and prohibitions contained in those orders. That specific authority is what allowed the court to find a public policy of curtailing infectious disease. *Ho*, 507 P.3d at 682. Gillespie cites no authority, and the

---

[5] Gillespie alleges in the Amended Petition that nine unspecified executive orders purportedly "allowed individual cities and local municipalities to pass certain resolutions and ordinances related to the mask mandates adopted by certain cities." [ECF No. 2 at 30]. However, she fails to identify a specific executive order that created the public policy she relies on for her claims, and she appears to abandon that theory in her response brief. The Court will not make arguments on Gillespie's behalf.

Court is not aware of any, that allows the Governor's public statements in a news article to set public policy. Because Gillespie relies on these public statements as opposed to a policy that can be found in a "clear mandate … as articulated by constitutional, statutory, or decisional law," she has failed to state a claim upon which relief may be granted. *Id*. at 678. For that reason, Dentsply's motion to dismiss is granted as to this *Burk* tort theory.

### 2. The immunities cited by Gillespie do not support a *Burk* tort claim.

Gillespie argues that the immunities set forth in 51 O.S. § 152.1[6] and Okla. Const. art. 5, § 22 should be extended to prohibit private employers from terminating an individual's employment "for performing their civic duties" related to their elected office. [ECF No. 17 at 17–19]. According to Gillespie, the "compelling public policy" reason for extending these doctrines to a private employer is that holding otherwise would "create a chilling effect on local government." [ECF No. 17 at 19]. Dentsply responds that these protections are narrow and should not be expanded to this case. [ECF No. 21 at 6–7]. The Court agrees with Dentsply.

---

[6] In her response to the motion to dismiss, Gillespie cites to section 152.1 of Title 12 of the Oklahoma statutes, rather than Title 51. However, there is no section 152.1 under Title 12, so the Court assumes she intended to cite to section 152.1 of Title 51, which is labeled "Sovereign immunity."

### a. Speech or Debate Clause

The Oklahoma Constitution provides limited protections for representatives during legislative sessions: "Senators and Representatives shall, except for treason, felony, or breach of the peace, be privileged from arrest during the session of the Legislature, and in going to and returning from the same, and, for any speech or debate in either House, shall not be questioned in any other place." Okla. Const. art. 5, § 22. This provision, called the Speech or Debate Clause, protects state legislators "*from suit* calling for judicial inquiry into their performance." *Hunsucker v. Fallin*, 408 P.3d 599, 604 (Okla. 2017) (emphasis added). "The fundamental purpose of the clause is to ensure that the legislative function may be performed free from a threat of litigation." *Brock v. Thompson*, 948 P.2d 279, 287 n.28 (Okla. 1997). The immunity provided to legislators is predicated on an individual being subjected to suit, not an individual who is terminated and then *brings suit*. Therefore, Gillespie's termination did not violate the Speech or Debate Clause of the Oklahoma Constitution in contravention of an Oklahoma public policy goal. Dentsply's motion to dismiss Gillespie's *Burk* tort claim is granted as to this theory.

### b. Sovereign immunity

Gillespie also relies on sovereign immunity under 51 O.S. § 152.1 to support her *Burk* tort claim. [ECF No. 17 at 17–18]. In relevant part, the

10

Oklahoma sovereign immunity statue provides: "The state, its political subdivisions, and all of their employees acting within the scope of their employment, whether performing governmental or proprietary functions, shall be immune from liability for torts." 51 O.S. § 152.1(A). Gillespie could potentially fall within the scope of the sovereign immunity statute because she was an elected member of the Broken Arrow City Council. 51 O.S. § 152(7), (10)–(11) (including "elected or appointed officers" in the definition of an employee of a "political subdivision," which includes municipalities).

But again, Gillespie fundamentally misunderstands, underappreciates, or perhaps ignores the scope and purpose of sovereign immunity. As stated in the statute, sovereign immunity protects individuals "from liability for torts" that *they commit* when "acting within the scope of their employment, whether performing governmental or proprietary functions" *Id.* § 152.1(A). Gillespie is not the one facing liability for a tort she committed in this action; rather, she is seeking to recover damages from her former employer. Therefore, because Gillespie is not facing liability for a tort she committed within the scope of her position with the City of Broken Arrow, sovereign immunity is not relevant to her allegations. Dentsply's motion to dismiss Gillespie's *Burk* tort claim is granted as to this theory.

11

### 3. Gillespie's First Amendment interests and the Oklahoma Citizens Participation Act ("OCPA") do not support a *Burk* tort claim.

Gillespie contends that the protections provided by the First Amendment and OCPA should serve as a basis for Burk tort claims. [ECF No. 17 at 20–21]. Otherwise, she argues, "working class citizens would strongly be deterred from holding local offices, and most of the candidates that would run for these offices will either be independently wealthy, or retired." [*Id.* at 21]. Dentsply argues that First Amendment protections do not provide "private employment job protection," and that "the OCPA was enacted for the benefit of individual defendants in litigation," and it is "not implicated by Plaintiff's discharge from Dentsply." [ECF No. 10 at 7–8, 10]. Dentsply is correct on both fronts.

#### a. The First Amendment

The First Amendment to the United States Constitution provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. The First Amendment applies to "state or local government employers, such as the City of [Broken Arrow], vis-à-vis the Fourteenth Amendment." *Brown v. City of Tulsa*, 124 F.4th 1251, 1266 (10th Cir. 2025) (citing *Gitlow v. New York*, 268

U.S. 652, 666 (1925)). A fundamental premise of the First Amendment is that it is a protection from government action, it "does not restrict private conduct." *Harris v. Quinn*, 573 U.S. 616, 629 n.4 (2014).

Because Gillespie was terminated by her private employer, not a governmental entity, the First Amendment is not relevant to her claim. She nevertheless argues that the Court should extend First Amendment protections to her under a *Burk* tort theory because "working class citizens would [otherwise be] strongly … deterred from holding local offices, and most of the candidates that would run for these offices will either be independently wealthy, or retired," and there would be "a chilling effect on participation in local government." [ECF No. 17 at 21]. Gillespie's policy arguments do not change the fundamental premise of First Amendment protections. The First Amendment protects against *government* conduct, not *private* conduct. Therefore, the First Amendment has no application here because Gillespie was employed by a private employer, not a public one. And as Dentsply aptly notes, providing private employees with seemingly unlimited protection for anything they say or do under the guise of free speech "would swallow the entire [*Burk*] doctrine." [ECF No. 21 at 4]. Dentsply's motion to dismiss is granted as to this theory of Gillespie's *Burk* tort claim.

### b. The OCPA

The OCPA is Oklahoma's anti-SLAPP law (strategic lawsuit against public participation), and it does not set forth a public policy for plaintiffs to use as a support for *Burk* tort claims. It is designed as a countermeasure for SLAPP suits, "which are aimed at deterring public participation in decision-making forums." *Anagnost v. Tomeck*, 390 P.3d 707, 710 (Okla. 2017). Anti-SLAPP laws are "the result of an increasing tendency by parties with substantial resources to file meritless lawsuits against legitimate critics, with the intent to silence those critics by burdening them with the time, stress, and cost of a legal action." *Krimbill v. Talarico*, 417 P.3d 1240, 1245 (Okla. Civ. App. 2017).[7]

The OCPA operates by "allowing parties to file motions to dismiss legal actions if the legal action relates or is in response to free speech." *Anagnost*, 390 P.3d at 710. It does not create a civil cause of action. The OCPA's inherently defensive nature is also reflected in the statute's stated purpose: "[T]the legislative purpose of the OCPA is to weed out meritless suits while protecting 'the rights of a person to file meritorious lawsuits for demonstrable injury.'" *Krimball*, 417 P.3d at 1246 (citing 12 O.S. § 1430(B)). Like the argument in support of her First Amendment theory, Gillespie argues that

---

[7] This case is cited for its persuasive effect. *See* Okla. S. Ct. R. 1.200(d)(2).

without allowing the OCPA to serve as a basis for her *Burk* tort claim, "working class citizens would strongly be deterred from holding local offices, and most of the candidates that would run for these offices will either be independently wealthy, or retired," and there would be a "chilling effect on participation in local government." [ECF No. 17 at 21]. The Court similarly rejects this argument.

The OCPA is designed to protect defendants in civil actions when those actions are initiated in retaliation for exercising free speech rights. *Krimball*, 417 P.3d at 1245; 12 O.S. § 1430(A). It is not an offensive weapon. As the plaintiff in this case, Gillespie is in the opposite position of what the OCPA contemplates. Because *Burk* tort claims must be "tightly circumscribed," and because this case presents the opposite situation contemplated in the OCPA, the Court finds that Gillespie has failed to state a claim that her termination was in violation of the OCPA and, consequently, in contravention of an Oklahoma public policy goal. Dentsply's motion to dismiss is granted as to this *Burk* tort theory.

### 4. The at-will employment exceptions that Gillespie relies upon under *Groce v. Foster* do not support a *Burk* tort Claim.

Gillespie argues that the following three categories of public policy exceptions to the at-will employment rule under *Groce v. Foster* support her *Burk* tort claim: (1) "performance of an important public obligation;" (2)

"exercise of a legal right or interest;" and (3) "performance of an act that public policy would encourage or refusal to do something that public policy would condemn, when the discharge is coupled with a showing of bad faith, malice or retaliation." [ECF No. 17 at 10]; 880 P.2d 902, 904–05. To the extent that Gillespie argues the list identified in *Groce* contains specific public policy exceptions that support a *Burk* tort claim, the Court disagrees. This list represents "five public-policy areas in which wrongful-dismissal claims may be actionable" that were identified by the Oklahoma Supreme Court in a case decided before *Burk*. *Groce*, 880 P.2d at 904. Gillespie must still identify a specific public policy goal in "Oklahoma's constitutional, statutory, or decisional law or in a federal constitutional provision that prescribes a norm of conduct for Oklahoma." *Vasek v. Bd. of Cnty. Com'rs of Noble Cnty.*, 186 P.3d 928, 932 (Okla. 2008).

Gillespie cites to several authorities[8] in her response brief: Okla. Const. art. 15, § 1; Okla. Const. pmbl.; *Wood v. Georgia*, 370 U.S. 375, 395 (1962); 12 O.S. § 1430; *Tice v. Dougherty*, 846 F. App'x 705 (10th Cir. 2021). [ECF No. 17 at 10–14]. Some of these authorities overlap with other issues that are

---

[8] The Court acknowledges that Gillespie cites to other authorities for purposes of comparison and to generally support her arguments. But the Court construes her response brief as relying on these listed authorities as the Oklahoma constitutional, statutory, or decisional law or federal constitutional provisions that support her *Burk* tort claim.

specifically addressed above, but some are not, and they are also not specifically referenced in the Amended Petition. "While it might be appropriate for a court to consider additional facts or legal theories asserted in a response brief to a motion to dismiss if they were consistent with the facts and theories advanced in the complaint … a court may not consider allegations or theories that are inconsistent with those pleaded in the complaint." *Hayes v. Whitman*, 264 F.3d 1017, 1025 (10th Cir. 2001). The above-identified authorities cited by Gillespie are in addition to, but are not inconsistent with, the *Burk* tort theories raised in the Amended complaint. Therefore, the Court will consider them.

First, Okla. Const. art. 15, § 1 does not support Gillespie's *Burk* tort claim. That provision requires "[a]ll public officers" to swear an oath before taking office. *Id*. Gillespie does not claim that she was terminated before taking the oath or that Dentsply otherwise interfered with her ability to take the oath before she took office. In fact, she asserts that she did take an oath, [ECF No. 17 at 11], so this provision does not support her *Burk* tort claim. Additionally, the oath itself is exceedingly broad. Officials must swear to "support, obey, and defend the Constitution of the United States, and the Constitution of the State of Oklahoma," and that they will "faithfully discharge [his or her] duties … to the best of [his or her] ability." Okla. Const. art. 15, § 1. But the Oklahoma Supreme Court requires *Burk* torts to be "tightly circumscribed,"

*Vasek v. Bd. of Cnty. Com'rs of Noble Cnty.*, 186 P.3d 928, 931 (Okla. 2008) (internal quotation marks and citation omitted). Gillespie identifies no outer boundaries for what conduct by a private employer would prohibit an employee from discharging the duties of an elected office to the best of his or her ability. Dentsply's motion to dismiss Gillespie's *Burk* tort claim is granted as to this theory.

Second, and for a similar reason, the preamble to the Oklahoma Constitution does not support Gillespie's *Burk* tort claim. The preamble states: "Invoking the guidance of Almighty God, in order to secure and perpetuate the blessing of liberty; to secure just and rightful government; to promote our mutual welfare and happiness, we, the people of the State of Oklahoma, do ordain and establish this Constitution." Okla. Const. preamb. These broad principles are not "tightly circumscribed" such that this provision can support a *Burk* tort claim. Dentsply's motion to dismiss Gillespie's *Burk* tort claim is granted as to this theory.

Third, Gillespie cites to *Wood v. Georgia*, 370 U.S. 375, 395 (1962) for the proposition that elected officials should "be allowed to freely express themselves on matters of current public importance." [ECF No. 17 at 11]. Gillespie's argument on this point is not well developed, but it appears that she is invoking the First Amendment issues raised in that case. For the reasons explained above, the First Amendment does not apply to Gillespie's

18

*Burk* tort claim against her private employer. Dentsply's motion to dismiss Gillespie's *Burk* tort claim is granted as to this theory.

Fourth, Gillespie cites to 12 O.S. § 1430, the OCPA, as supporting her *Burk* tort claim. [ECF No. 17 at 12–13]. The OCPA does not support Plaintiff's *Burk* tort claim for the reasons explained above. Dentsply's motion to dismiss Gillespie's *Burk* tort claim is granted as to this theory.

Fifth, Gillespie cites to *Tice v. Dougherty*, 846 F. App'x 705 (10th Cir. 2021), as supporting her *Burk* tort claim. [ECF No. 17 at 13]. *Tice* was an action brought under 42 U.S.C. § 1983 for alleged First Amendment violations. 846 F. App'x at 706–07. Again, and for the reasons explained above, the First Amendment does not to Gillespie's *Burk* tort claim. Dentsply's motion to dismiss Gillespie's *Burk* tort claim is granted as to this theory.

## C. Dismissal of Gillespie's *Burk* tort claim is with prejudice as to the immunity and free speech/OCPA theories, but it is without prejudice as to the remaining theories.

Dentsply requests that the First Amended Petition be dismissed with prejudice. [ECF No. 10 at 1]. Dismissal with prejudice is appropriate when a pleading "fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." *Knight v. Mooring Capital Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *United States ex rel.*

*Barrick v. Parker-Migliorini Int'l, LLC*, 878 F.3d 1224, 1230 (10th Cir. 2017) (internal quotation marks and citation omitted).

The Court finds that amendment would not be entirely futile, at least with respect to Plaintiff's *Burk* tort claim. However, certain *Burk* tort theories that Gillespie asserts cannot survive amendment: the immunity theories; and the free speech/OCPA theory. Gillespie's arguments on this front are specious. As explained in more detail above, Gillespie either ignores, underappreciates, or fundamentally misunderstands the limited scope and purpose of the Speech or Debate Clause, sovereign immunity, the First Amendment, and the OCPA. Extending those authorities to Gillespie's *Burk* tort claim would be wholly inappropriate because those authorities do not apply to private employers or are otherwise inapplicable. The Court finds amendment under these theories would be futile. However, the Court also finds that amendment would not necessarily be futile under a different theory or theories raised in the First Amended Petition or in Gillespie's response to Dentsply's motion to dismiss.

### D. Plaintiff fails to state a claim for wrongful discharge under Pennsylvania public policy.

Gillespie asserts a wrongful discharge tort claim under Pennsylvania law as an alternative to her *Burk* tort claim. [ECF No. 2 at 34–36]. Dentsply argues that Pennsylvania law does not apply to Gillespie's wrongful discharge claim. [ECF No. 10 at 11]. Plaintiff responds, in conclusory fashion,

that her "employment contract with Defendant, had a Pennsylvania choice of law provision." [ECF No. 17 at 21–22].

Dentsply is correct that Pennsylvania law does not apply to Gillespie's claim. This case was removed from state court on the basis of federal diversity jurisdiction under 28 U.S.C. § 1332(a). [ECF No. 2 at 3]. "A federal court sitting in diversity applies the substantive law of the state in which it sits." *Stenson v. Edmonds*, 86 F.4th 870, 880 (10th Cir. 2023). This Court sits in Oklahoma, so Oklahoma law applies, not Pennsylvania law.

Gillespie also attempts to rely on a choice of law provision in an agreement she had with Dentsply. [ECF No. 17 at 21–22]. But Dentsply correctly argues that the agreement is not relevant because Gillespie does not bring her claim under its terms. [ECF No. 21 at 7–8]. The agreement specifically states: "*This Agreement* shall be construed and enforced in accordance with the laws and judicial decisions of the Commonwealth of Pennsylvania." [ECF No. 2 at 40] (emphasis added). Because Gillespie's claim is for wrongful discharge under Pennsylvania public policy—not the employment agreement—the Court cannot apply Pennsylvania law. *See Almeida v. BOKF, NA*, 471 F.Supp.3d 1181, 1191 (N.D. Okla. 2020) ("a plaintiff's tort claims will fall outside a [choice of law provision] unless its language indicates some intent to the contrary [because] a choice-of-law provision, like any other agreement, should stretch only so far as its express terms allow.").

21

Although amendment would be futile in this district, it would not necessarily be futile in a Pennsylvania federal court. Therefore, Dentsply's motion to dismiss Plaintiff's wrongful discharge claim under Pennsylvania law is dismissed without prejudice.

### III. Conclusion

For the reasons stated above, Dentsply's motion to dismiss is GRANTED. Dismissal of the First Amended Petition is with prejudice as to the immunity and free speech/OCPA *Burk* tort theories, but it is without prejudice as to the remaining *Burk* tort theories. Dismissal is also without prejudice as to Gillespie's claim for wrongful discharge under Pennsylvania law.

Gillespie also seeks leave to amend if the Court grants Dentsply's motion to dismiss. [ECF No. 17 at 24]. Gillespie does not provide a proposed amended pleading, separately move to do so, or provide any basis for her request. Rather, she requests in conclusory fashion that "[i]f the Court feels inclined to grant Defendant's motion, in the alternative, Plaintiff respectfully requests this Court to grant Plaintiff leave to amend her Amended Petition in accordance with the contents of this motion pursuant to Rule 15 of the Federal Rules of Civil Procedure to cure any deficiencies." [*Id.*]. Courts have no obligation to recognize "perfunctory, conditional requests" for leave to amend that are made in a response to a motion to dismiss. *Sullivan v. University of Kansas Hosp. Auth.*, 844 F. App'x. 43, 52 (10th Cir. 2021).

Therefore, the Court denies Plaintiff's request for leave to amend her pleading. A separate judgment will be entered.

DATED this 10th day of October, 2025.

Sara E. Hill
UNITED STATES DISTRICT JUDGE